644 A.2d 168

**COMMONWEALTH of Pennsylvania**

v.

**Jeffrey JOHNSTON, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 16, 1993.

Filed June 8, 1994.

Elliot Jay Segel, Erie, for appellant.

Joseph P. Conti, Asst. Dist. Atty., Erie, for the Com., appellee.

Before DEL SOLE, TAMILIA and HESTER, JJ.

DEL SOLE, Judge:

Jeffrey Johnston appeals from the judgment of sentence entered, by the Court of Common Pleas of Erie County, following guilty verdicts on the charges of criminal conspiracy (18 Pa.C.S.A. § 903), burglary (18 Pa.C.S.A. § 3502), theft by unlawful taking or disposition (18 Pa.C.S.A. § 3921), and criminal mischief (18 Pa.C.S.A. § 3304). A Motion for Arrest of Judgment was granted for lack of sufficient evidence on the conviction for criminal mischief. Post-verdict motions were filed and denied. Appellant received a sentence of two to five years with five years probation consecutive to incarceration on the burglary conviction, and ten years probation for criminal conspiracy to be served consecutive to the probation on the burglary. Appellant filed this timely appeal. We reverse.

The following are the issues as framed by appellant:

I. The Commonwealth's concealment of material and exculpatory evidence, namely its plea bargained arrangement with appellant's alleged co-defendant/accomplice; its failure at trial to correct said witness' false and/or misleading denials of any such arrangement, and its participation in eliciting this misleading evidence through its direct examination of this witness; and its knowing exploitation of this misleading impression in closing argument all constituted prosecutorial misconduct and violated appellants state and federal constitutional rights to due process of law, a fair trial, and confrontation of adverse witnesses.

II. Appellant was denied his state and federal constitutional rights to the effective assistance of counsel.

Appellant met a man by the name of Robert Klingensmith while patronizing a bar called Rum Runners. Appellant and Klingensmith talked about a variety of issues and drank together for three or four hours. When they ran out of money, Klingensmith told appellant that he was formerly employed by McCormick Materials and there was a possibility that they could obtain money there. Klingensmith was referring to money in the petty cash fund used by the employees to buy soft drinks. Appellant expressed interest in tools and wanted to go with Klingensmith to McCormick Materials. They decided to meet later that night at a different bar called Haggerty's. Appellant left his car at Haggerty's and accompanied Klingensmith. The two men went to a supermarket where they bought rubber gloves and then proceeded to McCormick Materials.

Arriving at their destination, they went to the south end of the building where Klingensmith used a screwdriver to pry open the door and enter the building. In the lunchroom, Klingensmith took petty cash from the drawer. They continued to walk through the building taking items including weigh scales and looking for tools. They went to a garage and took ratchets, wrenches, sockets, hand tools and some power tools. They also took a service truck after loading it with an air compressor, a sump pump and mig welder. Appellant drove the truck and Klingensmith left in his own car. Appellant suggested that they go to a certain garage and unload and sell the materials. The garage was closed when they arrived, but they found the garage operators after unloading the truck. They left the garage and abandoned the vehicle behind a building about seven blocks away. Before leaving, they sprayed the truck with WD–40 to eliminate any fingerprints that might have been left. The Erie police found the truck the following day.

Before addressing the first issue, we will respond to the contention raised by appellee that appellant has waived his

right to challenge the pre-trial and trial conduct of the prosecutor and/or the trial court due to the failure to include this claim in the concise statement of the matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). "The purpose of the Pa.R.A.P. 1925(b) statement is to specify the particular issues which appellant intends to present on appeal in order to permit the trial court an opportunity to provide the appellate court with a focused and meaningful explanation for any challenged actions in its Pa.R.A.P. 1925(a) opinion." *Commonwealth v. Osteen*, 381 Pa.Super. 120, 552 A.2d 1124 (1989).

Appellant asserts that the 1925(b) statement was filed by the newly-retained appellate counsel who was not aware of these issues, since the trial transcripts had not been timely prepared prior to the filing deadline for the 1925(b) statement. New counsel notes in the 1925(b) statement that he was not retained by appellant until after the April 15, 1993 sentencing hearing. Before appellate counsel was retained, he did not have knowledge of these proceedings and had limited time to communicate with his client who was transferred to a Correctional Institution in another county after sentencing. Counsel requested, in the 1925(b) statement, that it not be considered all inclusive. The trial transcripts were available for new-counsel's review one day before the 1925(b) statement was due.

Appellees nonetheless argue that new-counsel should have filed a motion for an extension of time to review the transcripts, and since he did not, the issue should be waived. "Failure to raise a particular issue in the concise statement of matters complained of on appeal *may* result in waiver of that issue if that failure makes appellate review difficult." *Commonwealth v. Forest*, 427 Pa.Super. 602, 629 A.2d 1032, 1035 (1993). In *Osteen, supra,* this court did not waive the issues on appeal even though they were not in the 1925(b) statement because dismissal of the appeal on the basis of procedural default would inappropriately put the burden of such default on the defendant rather than the offending counsel; additionally, with criminal appeals, dismissal would result in further delay and expense through collateral appeals raising the inef-

fectiveness of counsel. Since appellate counsel did not have sufficient time to review the trial transcripts and our review of the issue is not impaired by the failure to include it in a 1925(b) statement, we decline to exercise our discretion to consider the issue waived.

Appellant's first allegation of error is that the Commonwealth concealed the plea bargain agreement of its chief witness from the defense resulting in an unfair trial and a violation of appellant's due process rights. By not divulging the information regarding the plea bargain or correcting the testimony of the chief witness, the prosecutor misled the jury and allowed it to believe that the chief witness did not receive favorable treatment from the Commonwealth. The chief prosecution witness in this case was Robert Klingensmith, appellant's co-defendant. Klingensmith was sentenced by the Honorable Stephanie Domitrovich, the judge presiding in appellant's case, prior to appellant's trial.

Klingensmith pled guilty on January 6, 1993 and signed a document entitled "Defendant's Statement of Understanding of Rights Prior to Guilty/No Contest Plea". (RR. 405a). Question five of the document inquires regarding a plea bargain and the typed portion of the response says "none. The defendant will plead guilty to Counts 1, 2, 3 and Count 4 will be nolle prossed with costs on defendant. BHF:jac." Immediately following this sentence in handwriting it is noted that "[t]he Commonwealth will have no objection to a county sentence based upon a favorable pre-sentence and full cooperation against any co-defendants. BF." (RR. 401). Furthermore, at co-defendant Klingensmith's sentencing hearing, the Commonwealth's attorney, Mr. Zak, commented:

Mr. Zak: If I may, if counsel has no objection, I'd like to ask the defendant a question. I don't know what's happened with Mr. Johnston's case right now, your co-defendant. Are you still willing to testify in that case?

Mr. Klingensmith: Yes.

Mr. Zak: As far as the Commonwealth is concerned, first of all, we have a fairly extensive presentence report, mainly the police report, which says something about ... defendant's statement and cooperation....

We have no problem with going ahead with the sentencing at this point, given the defendant's statements.

Sentencing transcript 2–16–93 at 10–11 (RR.417a–418a).

Judge Domitrovich then sentenced Klingensmith as follows: As to the sentence, the sentence is within the standard range. The Court has given the defendant a county incarceration sentence, since this was part of the plea bargain with the District Attorney's Office. The Court has taken into consideration the defendant has agreed to provide truthful cooperation in regard to a co-defendant ...

Sentencing transcript 2–16–93 at 16. Klingensmith received a sentence of incarceration of eleven and one-half months to twenty-three and one-half months followed by eight years probation. The other sentences were concurrent. Six days later, Judge Domitrovich entered an order granting Klingensmith a sentence of partial confinement so that he could be placed in the Work–Release Program.

Prior to appellant obtaining representation by the Erie County Public Defender's Office, appellant represented himself *pro se.* Appellant filed a *pro se* Motion for Pre–Trial Discovery on January 11, 1993. In its response, the Commonwealth revealed some statements by Klingensmith implicating appellant in the crimes; however, the plea bargain arrangement was not disclosed. When a public defender was appointed to represent appellant, another discovery request was made and the plea bargain between the Commonwealth and appellant was not included in the information. These discovery requests were made after Klingensmith pleaded guilty and agreed to assist the Commonwealth.

Appellant argues that the plea bargain impacts on the credibility of Klingensmith, the only eyewitness to directly link appellant to the crime. Therefore, the agreement should have been disclosed at the trial. At the end of the prosecution's

direct-examination of Klingensmith, the prosecutor questioned him as follows:

Q. Okay. Now, sir, you've already told this jury that before you even got here, of course, that you were charged, that you've entered your pleas of guilty, and that you've been sentenced, correct?

A. Yes.

Q. All right. And that your case is all done now, correct?

A. Except for paying for what I did.

Q. All right. Has anybody in any way promised you any leniency now that you're serving your sentence, promised you any leniency, like a change in your sentence or any sort of help as a result of your testimony today?

A. No.

Q. Okay. In other words, nobody has told you that now that you're testifying you're now going to get some help?

A. No.

Q. All right. Has anybody in any way forced you or pressured you in any way into saying things that you said today?

A. No.

Q. All right. Has anybody told you what to say today? Has anybody told you "I want you to get up" and gave you a script and told you what to say?

A. No,. I just was asked to tell what happened that night.

Q. All right. Why is it then—all right. You've served your sentence—

A. Serving.

Q. Or you're serving your sentence, and everything is done. Why are you testifying today then? Why are you taking the time today then to tell this jury what happened on September 16th and September 17th?

A. Because I think that the truth about that night should—should be told, the whole story, not just that—that I went and did this myself.

Trial transcript 3–9–93 at 186–187. On cross-examination, Klingensmith stated that he did not receive any inducement to testify at appellant's trial. In closing arguments, the prosecutor commented:

Ladies and gentlemen, the second thing that you have to deal with with respect to Robert Klingensmith is this: You can envision through common sense that there may be circumstances where the defendant, a co-defendant such as Robert Klingensmith, has taken the stand, pled guilty, but he's waiting for his sentence to come. Maybe he's going to be sentenced a month or two after the time of trial.

And you may ask yourself geez, under those circumstances maybe what he's doing is he's testifying so that he can get a sentence that he likes. The problem with that theory here is that Robert Klingensmith is sentenced. He's done. It's over with. And if he wants to look at me and tell me "I don't have anything to say anymore, what are you gonna do about it," he gets sentenced, he's serving his time and it is over with. And for Mr. Grayer [defense counsel] to suggest that there's some sort of special benefit that he's going to get, there is absolutely no evidence of that. There's nothing. As Mr. Klingensmith said, "Listen, I don't get my sentence changed. I don't get anything."

Trial transcript 3–9–93 at 125–126.

 Appellant believes that the Commonwealth's failure to disclose the plea bargain with Klingensmith was a violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), which requires the prosecution to release to the defense all material evidence tending to absolve the defendant. Our supreme court in *Commonwealth v. Moose,* 529 Pa. 218, 602 A.2d 1265, 1272 (1992), stated:

In *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court held "that suppression by the prosecutor of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87, 83 S.Ct. at 1196. Furthermore, "[w]hen the

'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within this general rule." *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972), quoting *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959).

*Id.* The defense made two discovery requests which would be considered "general request" for exculpatory evidence. *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Even though Klingensmith had not been formally sentenced at the time that the Commonwealth responded to the discovery requests, the Commonwealth was aware that Klingensmith had pleaded guilty with the expectation of receiving a county sentence if he fully cooperated with the prosecution in its case against appellant, and this was clearly documented in writing in Klingensmith's guilty plea form on January 6, 1993.

Appellant contends that the *Brady* rule would apply in this case for two reasons: the prosecution obtained a conviction through the use of materially false or perjured information, and the defense made no specific request for particular exculpatory evidence, but the prosecution knew, or had reason to believe, that the prosecutor possessed information or evidence that would tend to exculpate the defendant. See *Commonwealth v. Wallace*, 500 Pa. 270, 455 A.2d 1187 (1983).

We disagree with appellant that the first *Brady* situation would apply based upon the Commonwealth's nondisclosure during trial that Klingensmith received a county sentence due to his assurance to the Commonwealth that he would fully cooperate in the prosecution against appellant. Although the information is very relevant because it affects credibility, it cannot be characterized as materially false or perjured. The prosecuting attorney did not state that Klingensmith had never received any benefits from his testimony, he made it clear that Klingensmith already was sentenced and was not promised any future leniency.

However, the second *Brady* situation mentioned by appellant would be applicable to his case. The defense made general discovery requests for exculpatory evidence. Similarly, in *Moose, supra,* the defendant's discovery request sought any statements made by the defendant or witnesses—whether inculpatory or exculpatory—which would be characterized as a general request. We stated in *Moose* that:

> Where the request is general, rather than specific ... evidence is material "if the omitted evidence creates a reasonable doubt that did not otherwise exist...." [*Agurs* ], 427 U.S. at 112, 96 S.Ct. at 2402. We believe that a witness' apparent motivation is relevant. When that witness was a *significant witness* for the Commonwealth, who testified that Moose claimed he raped the victim and hit her with a rock, his motivation for testifying was crucial and hence, material. It "creates a reasonable doubt that did not otherwise exist." *Id.*

*Moose,* 529 Pa. 218, 232–234, 602 A.2d 1265, 1272–1273.

We believe that Klingensmith's plea bargain was material to appellant's case because it would have shown that he had a motivation to testify against appellant and that he was not merely testifying so that the truth would be told. Although Klingensmith was already sentenced at the time of appellant's trial and he would not receive a more lenient sentence after providing the testimony, he knew that the plea agreement, which recommended a county sentence, required him to fully cooperate and testify against appellant. This plea bargain gave Klingensmith incentive to testify against appellant and could create a reasonable doubt in the minds of the jurors that may not have otherwise existed. Thus, the prosecution's non-disclosure of this information affecting the credibility of its most important witness constitutes a violation of *Brady* and requires a new trial.

Appellant also raises several issues involving the effective assistance of trial counsel. However, since we have determined that appellant is entitled to a new trial, a review of these claims is unnecessary.

The judgment of sentence is reversed and the case remanded for a new trial.

TAMILIA, J., files a dissenting opinion.

TAMILIA, Judge, dissenting:

I respectfully dissent. The majority agrees that the *Brady*[1] rule does not apply because the conviction was not procured through the use of materially false or perjured information in this case. The majority does apply the second prong of *Brady* in that the prosecution did not provide information in the form of the plea agreement, which might have been exculpatory to appellant. The Commonwealth responds that the plea agreement, already entered on the record with sentence imposed and being served, was fully available before appellant's trial as a matter of public record. I agree with that position. Appellant had the information available at trial and pursued cross-examination of his co-defendant, Klingensmith, the primary witness against him, as to the plea bargain and whether it was an inducement for providing *biased* or false information against appellant. The *bias motive* was presented to the jury and could be argued by appellant to effect the credibility of the witness. There was nothing about the plea bargain, the court's understanding of it or Klingensmith's understanding which could lead to the belief that he was required to do anything but testify honestly. When the Commonwealth was assured of that fact, it recommended the bargain to the court. Since sentence was imposed and entered into *before* the trial of appellant, the Commonwealth had relatively little coercive power over the witness.

Counsel for appellant has used a broad shotgun approach in attributing wrongdoing to the court and the Commonwealth in this case. My perception of this case is that this was a simple, routine plea agreement honestly conducted in which a co-defendant agreed to cooperate with the Commonwealth in return for fair and reasonable consideration for himself. The wheels of justice would stop at both the Federal and State

1. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

levels if this process was denied. The claim of ineffectiveness of counsel and denial of exculpatory evidence because the Commonwealth did not submit to appellant's request for discovery by acknowledging the plea agreement which was a public record at the time of trial rings hollow. The kind of plea agreement which requires disclosure is that in which the sentence is delayed pending testimony by the witness so that the Commonwealth may maintain coercive power over the witness and which thereby becomes an inducement to testify in a fashion to please the Commonwealth. Bias under those conditions becomes a critical issue. *See Commonwealth v. Lipscomb,* 269 Pa.Super. 219, 409 A.2d 857 (1979).

The cross-examination by defense counsel as well as questions by the Commonwealth's attorney clearly focused on whether the witness received any leniency or would receive any future favored treatment. The same trial judge presided at both trials, and since the majority already has rejected the allegation of wrongdoing by the court, it must be presumed she maintained the integrity of the judicial process by assuring an appropriate consideration by the jury of the plea bargain as it might reflect bias. Nothing on the record discloses that his testimony manifested an agreement which would result in any benefit or favored treatment to the witness. I would affirm the judgment of sentence.