671 A.2d 235

**COMMONWEALTH OF PENNSYLVANIA**

v.

**Gregory TAYLOR A/K/A Darrell Goodley, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 10, 1995.

Filed Jan. 25, 1996.

---

Jeffrey P. Shender, Philadelphia, for appellant.

Julie Dugan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before DEL SOLE, BECK and HUDOCK, JJ.

DEL SOLE, Judge.

As a result of three separate incidents, a jury found Gregory Taylor guilty of three counts of robbery (18 Pa.C.S.A. 3701), attempted rape (18 Pa.C.S.A. 3121), aggravated assault (18 Pa.C.S.A. 2702), simple assault (18 Pa.C.S.A. 2701), two counts of burglary (18 Pa.C.S.A. 3502), two counts of terroristic threats (18 Pa.C.S.A. 2706), and two counts of possession of

an instrument of crime (18 Pa.C.S.A. 907). Appellant was sentenced to three consecutive ten to twenty year terms of imprisonment for the robberies, a consecutive term of five to ten years imprisonment for attempted rape, a consecutive term of five to ten years for aggravated assault, and suspended sentences were imposed for the remaining convictions. No post-sentence motion was filed.

At about 4:00 p.m. on May 11, 1993, victim one, a 42-year old white woman and her seven year old daughter were leaving the school where she teaches in Center City Philadelphia. They passed a black male as they were leaving the school building. They proceeded to the victim's car across the street from the school and a black male, on a black mountain bike, approached the car on the driver's side. Before victim one could close the car door, the man positioned the bike against the door, pulled a pointy steak knife and demanded money and jewelry. She gave the man twenty dollars, a watch and a ring. When someone else drove into the parking lot, the man fled on the bike. The victim described the man as a very dark complected black male, five feet ten inches to six feet tall, twenty-five to thirty years old, mustache and small beard, with a muscular build. He was dressed in black biking shorts, a black cap, a dark colored T-shirt and round sunglasses. On June 17, 1993, victim one identified Appellant from a photo array as the man who robbed her. The police recovered a black mountain bike from Appellant's residence after a search on June 17, 1993.

On May 26, 1993, at approximately 3:45 p.m., victim two, a 30 year old white female, was sitting on the couch in the first floor of her home, when a black male, brandishing a knife forcibly entered her home. The man demanded money and jewelry, but the victim denied having anything. While still holding the knife, the man hit victim two on her head with his hands and the butt of the knife. The man put the knife to her throat and they went to the kitchen where she gave him money from her wallet. While in the kitchen, the man took one of victim's large kitchen knives which he used for the duration of the robbery. The man forced victim two at knife

point to go through all three floors of the house, room by room, in search of money and jewelry. As they proceeded through the house, the man repeatedly hit the victim, knocking her to the ground, picking her up and smashing her head against the walls, and stomping on her head.

When they reached the third floor, the man pushed victim two on a bed and told her to remove her clothes. She stated that she did not want to and he informed her that he had just finished masturbating before he came into her house. She took off all of her clothing except for her underpants. He also asked her if she had ever had sex with a black man, and she responded that she had not but she stated that she married young and did not have anything against them. The man took off his shorts and laid on top of her, rubbing his penis against her while keeping the knife at her throat. He asked her, "isn't this great." He then put his hand inside her underpants and then inside her vagina. Victim two was praying and stated aloud that she loved God. The man stopped, stated that he respected that, got up, pulled her up and hit her in the head. The man kept the knife at her throat as they were leaving the third floor. At this point, the victim's husband came home and he walked up the steps and he saw his wife almost totally unclad and the man with the knife to her throat. The victim's husband pleaded with the man to leave. The man commented that he was going to kill the victim. As they descended the stairs, the man demanded money from victim two's husband and he gave it to him. The victim and her husband were then ordered into the basement and the man shut the door and placed a chair under the doorknob and fled from the house. Through the basement entrance, the victim's husband saw the man running and now wearing a biking hat. Victim two suffered bruises and cuts to her face and sustained a temporary hearing loss.

Victim two described the man as being about five feet ten inches tall, short hair, 170 pounds, very dark complected, with a mustache and goatee, pock marks on his face, and very well built. She stated that he was wearing biker shorts, a dark T-shirt, bike gloves, tennis shoes and round sunglasses. Victim

two's husband described the man as five feet eight inches to five feet ten inches tall, short hair, mustache and hair on the chin, very dark skined black male, dressed in black biker shorts, dark blue T-shirt, bike gloves and round sunglasses with a gold frame and wearing a hat when he fled. The victim and her husband also stated that they saw the man approximately one week later near the University of Pennsylvania at about 4:00 p.m. They called the police and the man ran away. On June 30, 1993, victim two and her husband were shown three separate photospreads containing Appellant. They both identified him in the third display as the man who robbed them and they also identified him at trial.

On June 14, 1993, at about 5:30 p.m., victim three, a 26 year old white female, was putting the key into the front door of her home in Center City Philadelphia when she was approached by a black male who asked her for some water for his car. She agreed and he handed her a container. She told him to stay right there and she would be right back. She did not close her door. She went up the stairs to her apartment and filled the container. As she proceeded back down the stairs, she saw the man enter her residence and noticed that he was reading a coupon circular. She walked toward him with the container and he mumbled something, grabbed her by the wrist, and told her not to say anything. Victim three began screaming and struggling with the man and he fled. The police were called.

Victim three described the man as dark complected, approximately five feet eight to five feet ten inches in height, with a low hair cut, facial hair, wearing dark blue shorts, a white T-shirt, sneakers and sunglasses. The police transmitted the description over the radio and the man was almost immediately apprehended after a brief pursuit. During the chase, the man took off his T-shirt and threw it away and it was later recovered. The police took victim three to the man and she identified him as her assailant. Victim three's neighbor, heard her screaming and looked out her window and saw a man running. The neighbor described the man as wearing a short-sleeved light shirt and dark blue shorts, and she stated that he

threw a newspaper from his right hand. Victim three later identified the newspaper as the coupon circular that was in front of her door and in the man's hand. The neighbor stated that a large kitchen knife, about ten to twelve inches long, fell out of the newspaper when the man threw it. Victim three did not see or feel the knife during the assault. The cases were consolidated for trial, Appellant was convicted and this appeal followed.

■ Before we address the issues, we shall determine whether Appellant's claims have been waived for failure to file a concise statement of the matters complained of pursuant to Pa.R.A.P. 1925(b). The trial court ordered the defense to file the 1925(b) statement by October 14, 1994. On October 12, 1994, Attorney Michael C. Schwartz of the Philadelphia Public Defender's Office, requested a thirty day extension since he did not have the notes of testimony from the consolidation hearing. On February 3, 1995, Judge Anne E. Lazarus filed an Opinion noting that two months elapsed since defense counsel requested an extension to file the 1925(b) statement and no response has been filed. The court concluded that because it was not informed of any issues raised on appeal, all claims were waived.

Upon receiving the Opinion, Assistant Public Defender Jeffrey Shender, wrote Judge Lazarus on February 8, 1995 requesting that she withdraw the opinion. Defense Counsel claimed that the prior attorney on the case was leaving the Public Defender's Office and he was newly assigned to handle the appeal. He explained that the original attorney informed him that he did not receive the notes of testimony from the consolidation hearing until the end of January 1995. The trial judge, however, did not withdraw her opinion suggesting that the issues were waived and the Commonwealth urges us to find waiver. We decline to do so.

■ Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure provides:

The lower court forthwith may enter an order directing the appellant to file of record in the lower court and serve on

the trial judge a concise statement of the matters complained of on the appeal no later than 14 days after entry of such order. A failure to comply with such direction **may** be considered by the **appellate court** as a waiver of all objections to the order, ruling or other matter complained of. (Emphasis added).

Rule 1925(b), 42 Pa.C.S.A. "[T]he issue of waiver based on a violation of Rule 1925(b) is expressly reserved to the appellate courts, and not to the trial courts. *Id.*" *Commonwealth v. Donahue,* 428 Pa.Super. 259, 630 A.2d 1238, appeal denied, 538 Pa. 612, 645 A.2d 1316 (1993). Appellate counsel argues that he was newly assigned to the case when the 1925(b) statement was due and the relevant notes of testimony were not transcribed until right before he was appointed to the case. In *Commonwealth v. Johnston,* 434 Pa.Super. 451, 644 A.2d 168 (1994), we held that we would not consider issues waived even though they were not included in a 1925(b) statement because the defendant would be unfairly punished, further delay would result from dismissal and collateral appeals raising counsel's ineffectiveness, and, since counsel did not have sufficient time to review the transcripts and appellate review was not diminished by the failure to submit a 1925(b) statement, we considered the merits of the appeal. In *Commonwealth v. Cortes,* 442 Pa.Super. 258, 659 A.2d 573 (1995), we held that with the advent of new Criminal Procedure Rule 1410, which eliminated post-verdict motions and made the filing of post-sentencing motions optional, failure to include issues in a 1925(b) statement does not automatically result in waiver of those issues on appeal. This would be a reversion to the "double waiver" doctrine and would violate the spirit of New Rule 1410. Where the lack of a trial court opinion on an issue does not prevent meaningful review, we will review the issues on appeal. *Id.* Review of the only issue presented is not hampered by the lack of a trial court opinion; therefore, the failure to file a 1925(b) statement is not fatal to the claim on appeal.

 Appellant contends that the trial court erred by consolidating three unrelated cases—an on-the-street robbery,

a burglary by ruse, and a burglary by forceful/surreptitious entry—into a single trial where the cases were not so similar as to show a distinctive signature or common perpetrator. "Whether or not separate indictments should be consolidated for trial is within the sole discretion of the trial court and such discretion will be reversed only for a manifest abuse of discretion or prejudice and clear injustice to the defendant. *Commonwealth v. Newman,* 528 Pa. 393, 598 A.2d 275 (1991).

■ Pennsylvania Rule of Criminal Procedure 1127 states:

A. Standards.

(1) Offenses charged in separate indictments or informations may be tried together if:

> (a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion.

Rule 1127(A)(1)(a), 42 Pa.C.S.A. Furthermore, if it appears to the trial court that the defendant would be prejudiced by offenses or defendants being tried simultaneously, the court may order separate trials of offenses or defendants. Pa. R.Crim.P., Rule 1128, 42 Pa.C.S.A.

> The "prejudice" of which Rule 1128 speaks is not simply prejudice in the sense that appellant will be linked to the crimes for which he is being prosecuted, for that sort of prejudice is ostensibly the purpose of **all** Commonwealth evidence. The prejudice of which Rule 1128 speaks is, rather, that which would occur if the evidence tended to convict appellant only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence.

*Commonwealth v. Lark,* 518 Pa. 290, 307–308, 543 A.2d 491, 499 (1988).

■ The Commonwealth argues that although evidence of a defendant's other crimes is generally inadmissible to show a defendant's bad character or propensity for committing criminal acts, one of the recognized exceptions to this rule is to establish the identity of the person charged with the commis-

sion of the crime on trial where there is such a logical connection between the crimes that proof of one will tend to show that the accused is the person who committed the other crime. Our supreme court in *Commonwealth v. Rush*, 538 Pa. 104, 111–113, 646 A.2d 557, 560–561 (1994), stated:

As stated in *Commonwealth v. Wable*, 382 Pa. 80, 84, 114 A.2d 334, 336 (1955):

[E]vidence of other crimes **is** admissible when it tends to prove a **common scheme,** plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others or to establish the identity of the person charged with the commission of the crime on trial,—in other words where there is **such a logical connection** between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other. (Emphasis added). . . . Indeed, this Court has often cited McCormick, *Evidence,* Sect. 190 (1972 2d ed.), wherein evidence of other crimes is said to be admissible:

To prove other like crimes by the accused **so nearly identical in method** as to earmark them as the handiwork of the accused. Here **much more is demanded than the mere repeated commission of crimes of the same class,** such as repeated burglaries or thefts. The device used must be so unusual and distinctive as to be like a **signature.** (Emphasis added) (Footnotes omitted).

*Id.,* quoting, *Commonwealth v. Bryant,* 515 Pa. 473, 477–478, 530 A.2d 83, 85–86 (1987). Factors to be considered to establish similarity are the elapsed time between the crimes, the geographical proximity of the crime scenes, and the manner in which the crimes were committed. *Rush, supra.*

The Commonwealth submits that the consolidation of the robberies in this case was proper because the abundant similarities between the crimes were sufficiently probative of the perpetrator's identity such that proof as to one perpetrator naturally tends to prove the identity of the other. The Commonwealth also contends that the similarities in the assaults also show a common scheme, plan or design so that

proof of one tends to prove the other. The similarities enumerated by the Commonwealth are: (1) the victims were white females between the ages of twenty-six and forty-two; (2) the assaults all occurred in a very small area of Center City Philadelphia—blocks from each other; (3) the crimes occurred within slightly over a month of each other; (4) the crimes occurred in the late afternoon or early evening; (5) the crimes occurred on weekdays; (6) in all cases defendant entered a home or building that he was unauthorized to enter; (7) in all cases defendant used force or threat of force in an attempt to obtain property and did in fact take money and jewelry from three of the victims—victim one, victim two and her husband; (8) in all cases defendant had a knife; (9) all crimes occurred not far from defendant's residence; (10) defendant wore similar distinctive clothing in the assaults; (11) the victim's description of the perpetrator was remarkably similar; (12) all victims positively identified defendant at trial; and (13) when defendant was arrested for the June 14th assault of victim three and his house was subsequently searched, items such as the eleven inch knife, sunglasses and bicycle used in the assaults were confiscated.

Appellant contends that the factors specified by the Commonwealth, individually or collectively, did not justify consolidation. He argues that none of the factors are sufficiently distinct as to be the handiwork of one person. Appellant asserts that there is nothing distinctive about the women's ages, their race, the area of the city in which the crimes occurred, nor in the time of the day that the crimes occurred. Appellant argues further that the clothing of the perpetrator was not unique for a May afternoon. Appellant also differentiates the weapons used in the assaults noting that one knife was described as a kitchen knife and the other a small steak knife. He also makes much of the fact that the knife was used differently in each case. The fact that the perpetrator committed violence against one of the victim's but not the others is not such a distinguishing factor so that joinder would be inappropriate. *Commonwealth v. Morris*, 493 Pa. 164, 425 A.2d 715 (1981) (robbery cases consolidated even though the

assailant beat one victim, but not the other). The crux of Appellant's argument is that the similarities are confined to relatively insignificant details, and, therefore, consolidation was improper.

In the case *sub judice*, the robberies have such a logical connection between them that the proof of one naturally tends to show that the Appellant is the one who committed the others. Although Appellant attempts to distinguish the three crimes by labelling them as a "robbery on the street", a "forcible entry burglary/robbery/attempted rape", and an "entry by ruse burglary/attempted robbery", the offenses contain sufficient cumulative and distinctive similarities to warrant consolidation of the trials. The description of the perpetrator's physical characteristics given by the victims was strikingly similar. The perpetrator also wore the same type of clothing and sunglasses in all three instances. A knife was also possessed in each robbery even though the perpetrator concealed the knife in one instance. The victims were all white, adult females. The crimes all occurred within a thirty-four day period, within close proximity to one another, during the afternoon or early evening. The victims here all identified the Appellant as the one who robbed them. A number of items linked to Appellant were identified by the victims. Victim one testified that the sunglasses that were taken from Appellant after he was arrested for the assault on victim three looked similar to the sunglasses that the perpetrator wore when she was robbed. Victim two and her husband testified that the sunglasses identified by victim one and victim three looked like the pair worn by Appellant when they saw him near the University of Pennsylvania a week after they were robbed. Victim three testified that the knife presented at trial looked exactly like the knife recovered by police after she was attacked, and victim two testified that the same knife looked like the one brandished by the perpetrator when he entered her home. Victim one testified that the bicycle retrieved during a search of Appellant's home looked like the one the perpetrator rode when she was robbed in the parking lot. Furthermore, it is not substantial that one robbery occurred

outside since the victim in that case observed the perpetrator in the school building immediately prior to the robbery in the parking lot; therefore, in each case, the perpetrator entered buildings without having authority.

The three cases involved here contain overwhelming similarities and are probative of the identity of the perpetrator and of a common scheme, and each offense would have been admissible in a separate trial for the others. The similar criminal pattern employed and the high correlation between the details of the crimes indicates that all of the robberies are the handiwork of the same person. Additionally, the Commonwealth presented the evidence of each robbery separately to prevent any confusion on the part of the jury and Appellant has failed to demonstrate any prejudice as a result of the consolidation. Thus, we conclude that the trial court's joinder of the offenses was not an abuse of discretion nor was it an injustice to the Appellant.

Judgment of sentence affirmed.