J-A11035-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| VICTOR CHARLES SMITH | : | |
| | : | |
| Appellant | : | No. 919 MDA 2023 |

Appeal from the Judgment of Sentence Entered April 21, 2023
In the Court of Common Pleas of Lancaster County
Criminal Division at Nos:  CP-36-CR-0004552-2021,
CP-36-CR-0005082-2020

BEFORE:  BOWES, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY STABILE, J.:                **FILED: NOVEMBER 1, 2024**

Appellant, Victor Charles Smith, seeks review of the judgment of sentence entered by the Court of Common Pleas of Lancaster County (trial court).  Following a jury trial, Appellant was found guilty of sex offenses against two minor children (K.C. and D.H.), whose individual cases were consolidated for trial purposes.  He was then sentenced to an aggregate prison term of 16 to 35 years and designated as a Sexually Violent Predator.  On appeal, Appellant contends that relief is due because (1) the trial court erroneously admitted into evidence prior bad acts alleged by a third victim (A.H.), and (2) the trial court erred in denying his motion to sever the cases of K.C. and D.H.  Finding merit in Appellant's first issue, we vacate the judgment of sentence and remand for a new trial on that ground.

In 2020, K.C. (then 16 years of age) reported to her adoptive mother, Amanda Keeler, that she had been sexually abused by Appellant on multiple occasions over a period of several years. Keeler then spoke to her three other children to learn whether any of them had also been sexually abused by Appellant. One of Keeler's other children, D.H., who was 13 years old at that time, reported one such incident when he had been between five and seven years old. Both children claimed that the offenses had occurred during their overnight stays in Appellant's home in Lancaster County, Pennsylvania.

Keeler contacted the children's uncle, A.H., to discuss what K.C. and D.H. had told her. A.H., in turn, relayed those the allegations to the police, and when doing so, he disclosed his own single incident of abuse that had allegedly occurred in Appellant's Delaware home about 17 year earlier, when A.H. was six or seven years old – he was about 23 years old when K.C. came forward.

Appellant was charged with sex crimes against K.C. and D.H., and the cases of the two minors were consolidated. There was no physical evidence that incriminated Appellant or otherwise corroborated the accounts of K.C. and D.H. To help prove Appellant's guilt as to those two victims, the Commonwealth sought to admit into evidence the allegations of A.H. as prior bad acts under Pennsylvania Rule of Evidence 404(b)(2). The Commonwealth

asserted that the prior bad acts detailed by A.H. established that Appellant had a common plan or scheme to sexually molest the children in his family.[1]

Prior to trial, Appellant moved to sever the cases of K.C. and D.H., arguing that trying them together would be unduly prejudicial because the alleged circumstances of the offenses against each child were not relevant to the other. Appellant also contended that A.H.'s allegations should be excluded from the evidence because they would be improperly used by the Commonwealth to suggest that Appellant had a propensity to sexually abuse children. The trial court denied the severance motion, and ruled that A.H.'s testimony would be admissible. A.H. went on to testify regarding the incident in Delaware which he had reported to the police.[2]

As to the charges relating to K.C., the jury found Appellant guilty of one count of rape of a child; one count of involuntary deviate sexual intercourse with a child; one count of unlawful contact with a minor; one count of corruption of minors; and one count of indecent assault of a person less than 13 years of age. As to the charges relating to D.H., the jury found Appellant

---

[1] The record reflects that, as of the date of Appellant's trial in Pennsylvania, there was a pending criminal case in Delaware, where A.H. was the alleged victim.

[2] The trial court instructed the jury that A.H.'s testimony was presented for the limited purpose of proving a common plan or scheme to commit the charged offenses against K.C. and D.H. The jury was also told not to regard A.H.'s testimony as evidence that Appellant had a bad character or criminal propensities. **See** N.T. Trial, 9/16/2022, at 469-70.

guilty of one count of indecent assault of a person less than 13 years of age; one count of corruption of minors; and one count of unlawful contact with a minor.

Appellant was sentenced as outlined above, and he filed a post-sentence motion in which he argued that the admission of A.H.'s testimony and the denial of severance were improper. The post-sentence motion was denied, and Appellant timely appealed. Both Appellant and the trial court complied with Pa.R.A.P. 1925. In his brief, Appellant now raises two issues for our consideration:

> [I]  Whether the trial court committed a reversible error of law in its misapplication of the standard set forth in Pa.R.E. 404(b), specifically by permitting the introduction of A.H.'s testimony[.]
>
> [II] Did the trial court error in refusing to grant [Appellant's] pretrial motion to sever the above-referenced dockets, which allowed the jury to be exposed to highly inflammatory incriminating evidence of another child sex related criminal offense involving a minor of the opposite sex?

Appellant's Brief, at 6 (suggested answers omitted).

In his first claim, Appellant asserts that the trial court erred in admitting A.H.'s testimony regarding an alleged sexual assault in Delaware because the circumstances of that incident contrasted with those described by K.C. and D.H. According to Appellant, A.H.'s testimony was inadmissible under Pa.R.E. 404(b), as it constituted mere propensity evidence which deprived him of a fair trial.

On review of a trial court's ruling on the admissibility of evidence, this Court applies an abuse of discretion standard. **See Commonwealth v. Arrington**, 86 A.3d 831, 842 (Pa. 2014). "Evidence is admissible if it is relevant – that is, if it tends to establish a material fact, makes a fact at issue more or less probable, or supports a reasonable inference supporting a material fact – and its probative value outweighs the likelihood of unfair prejudice." **Commonwealth v. Boczkowski**, 846 A.2d 75, 88 (Pa. 2004) (internal citations omitted).

Pennsylvania Rule of Evidence 404(b)(1) prohibits the use of prior bad acts "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). Exceptions to that rule are enumerated in Rule 404(b)(2), which allows evidence of prior bad acts to be admitted if used to prove a defendant's "opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2). Further, in order for evidence of other crimes to be admissible, its probative value must outweigh its potential for unfair prejudice against the defendant. **See id**.

It has long been recognized that caution is warranted when the prosecution seeks to admit evidence of prior bad acts because it may so easily be used to undermine the presumption of a defendant's innocence. **See Shaffner v. Commonwealth**, 72 Pa. 60, 65 (Pa. 1872) ("It is not proper to raise a presumption of guilt, on the ground, that having committed one crime,

the depravity it exhibits makes it likely he would commit another."); *see also*

***Commonwealth v. Trowery***, 235 A.2d 171, 172 (Pa. Super. 1967) ("The

presumed effect of such evidence is to predispose the minds of the jurors to

believe the accused guilty, and thus effectually to strip him of the presumption

of innocence.").

In ***Commonwealth v. Hicks***, 156 A.3d 1114 (Pa. 2017), our Supreme

Court reaffirmed that prior bad act evidence is subject to stringent

admissibility requirements, especially where the prosecution relies on the

"common plan or scheme" exception of Rule 404(b)(2). To satisfy this

exception, there must be a "***striking similarity*** – or ***logical connection*** –

between the proffered prior bad acts and the underlying charged crime."

***Hicks***, 156 A.3d at 1125 (emphases added).[3]

This logical connection "must have existed in the mind of the actor,

linking them together for some purpose he intended to accomplish; or it must

be necessary to identify the person of the actor, by a connection which shows

that he who committed the one must have done the other." ***Id***. (quoting

***Shaffner***, at 72 Pa. at 65). Prior bad acts may be admissible if they are

---

[3] As discussed in the dissenting and concurring opinions of ***Hicks***, the "common plan or scheme" exception of Rule 404(b)(2) has often been conflated in decisional law with the distinct "identity" (or *modus operandi*) exception enumerated separately in that same rule. ***See Commonwealth v. Hicks***, 156 A.3d 1114, 1130-31 (Pa. 2017) (Saylor, J., concurring); ***see also id***., at 1143-44 (Donohue, J., dissenting). The ***Hicks*** majority seemed to blend the two concepts together as alternative parts of a single exception, and as the holding is binding, that approach has been applied here.

"strikingly similar" to the alleged crimes, or committed in a way "so unusual or distinctive as to be like a signature." *Hicks*, 156 A.3d at 1125-26 (quoting *Commonwealth v. Rush*, 646 A.2d 557, 560-61 (Pa. 1994)). We have compared a common plan to "a script or playbook of criminal tactics that worked for the offender when committing past crimes." *Commonwealth v. Cosby*, 224 A.3d 372, 402 (Pa. Super. 2019), *vacated on other grounds*, 252 A.3d 1092 (Pa. 2021).

These exceptions "cannot be stretched in ways that effectively eradicate [Rule 404(b)(1)]." *Commonwealth v. Ross*, 57 A.3d 85, 104 (Pa. Super. 2012) (*en banc*). Indeed, "much more is demanded than the mere repeated commission of crimes of the same class[.]" *Hicks*, 156 A.3d at 1126 (quoting *Rush*, 646 A.2d at 561). "Rather, there must be such a high correlation in the details of the crimes that proof that the defendant committed one makes it very unlikely that anyone else but the defendant committed the others." *See Commonwealth v. Morris*, 425 A.2d 715, 721 (Pa. 1981). The prior bad acts must have a "close factual nexus sufficient to demonstrate the[ir] connective relevance" to the charged crimes. *Ross*, 57 A.3d at 104.

Factors that may establish the required similarity include "the elapsed time between the crimes, the geographical proximity of the crime scenes, and the manner in which the crimes were committed." *Commonwealth v. Taylor*, 671 A.2d 235, 240 (Pa. Super. 1996). "Furthermore, the importance of the intervening time period is inversely proportional to the similarity of the

crimes in question." ***Commonwealth v. Einhorn***, 911 A.2d 960, 967 (Pa. Super. 2006) (internal quotes omitted); ***see also Commonwealth v. Aikens***, 990 A.2d 1181, 1186 (Pa. Superior. 2010) (holding that the strong parallels between two offenses outweighed the lengthy intervening time period between them).

In the present case, the trial court reasoned that Appellant's prior bad acts against A.H. were admissible as "evidence of common scheme, plan, or design," because his conduct "fit a certain pattern." Trial Court 1925(a) Opinion, 9/26/2023, at 5-6. Of course, the trial court did not state precisely what this "certain pattern" was, instead vaguely alluding to "abuse [of K.C., D.H., and A.H.] starting around the same age." ***Id***., at 5. The trial court was vague out of necessity, having acknowledged in its 1925(a) opinion that A.H.'s testimony had a number of "dissimilarities from the present case's circumstances." ***Id***., at 6.

Due to those marked differences, we cannot agree with the trial court's conclusion that A.H.'s testimony regarding Appellant's prior bad acts was admissible as evidence of a common plan or scheme. There is no rational way to construe the three accounts of K.C., D.H., and A.H. as being somehow linked together for a "common purpose" in the mind of Appellant. Nor can the alleged offenses be characterized as being "strikingly similar," as is required to comport with Rule 404(b)(2) and controlling decisional law.

To summarize, K.C. alleged that her abuse occurred when she was between seven to 12 years old, starting in 2010, when she began having overnight visits at a house in Pennsylvania that belonged to her grandmother's boyfriend, Appellant. During that period, she and her younger brother, D.H., would often sleep in the living room with Appellant. As alleged, he would wake K.C. up at night and digitally penetrate her under her underwear. On other occasions, Appellant would force K.C. to touch his penis with her hands, and then put his penis in her mouth. Appellant would also sexually assault K.C. whenever she went to the bathroom, where he would force her to perform oral sex. At least once, Appellant ejaculated in K.C.'s mouth. She was frequently told by Appellant after these incidents not to tell anyone about their "secret."

D.H. reported only a single incident that occurred when he was between five and seven years old. During an overnight visit to Appellant's home, he was woken in the living room as Appellant began rubbing the child's genitals. D.H. told Appellant to stop, at which point Appellant withdrew his hand. D.H. then went to sleep, and he did not report that any further instances of abuse had happened thereafter.

A.H., the uncle of K.C. and D.H., alleged that he was sexually abused on a single occasion by Appellant when he was between six and seven years old. This would have been in 2003 or 2004, about seven or eight years before the abuse of K.C. began. At that time, he and his mother, Appellant's

girlfriend, lived in Appellant's house in Delaware. At some point in the morning or early afternoon, when no one else was home, Appellant touched A.H.'s penis with his hand and put A.H.'s penis in his mouth. Appellant also nonverbally directed A.H. to "lick his butt" as he stood facing away from A.H. and bent forward. N.T. Trial, 9/15/2022, at 265-66. A.H. did not recall Appellant ever telling him to keep the incident a secret. *See id*. at 267.

These facts do not satisfy the propensity evidence exceptions invoked by the Commonwealth at trial. There is no apparent common plan or scheme that Appellant would have had in his mind at the time the offenses were alleged to have occurred. Nor is there anything unique, distinct, or unusual about the manner in which the victims were sexually abused such that we can discern a close factual nexus sufficient to demonstrate their connective relevance. *See Ross*, 57 A.3d at 104. Sex crimes against minor children, by definition, involve a sexual act on a child, and that is the extent of the material similarities between the offenses described here. *See Commonwealth v. Bidwell*, 195 A.3d 610, 627 (Pa. Super. 2018) ("Similarities cannot be confined to insignificant details that would likely be common elements regardless of the individual committing the crime.").

In K.C.'s account, Appellant abused her over a period of several years; Appellant digitally penetrated her and forced her to perform oral sex in both the living room and bathroom of his house. D.H. stated that Appellant rubbed

his genitals over his pants on one occasion, and that after telling Appellant to stop, the touching ceased, and never occurred again.

The prior bad acts disclosed by A.H. have very little in common with the offenses described by either K.C. or D.H. In addition to taking place in a different state, a different time of day, and several years before the abuse of K.C. began, A.H. was forced to perform anilingus on, and receive fellatio from, Appellant. K.C.'s abuse spanned several years, and *not one* of the incidents in that time involved the types of sexual acts described by A.H. The acts described by D.H. are also entirely distinct from those alleged by his uncle.

The facts before us are analogous to those in cases where it was held that prior bad acts did not show a common scheme or unique signature relevant to the charged offenses. **See Ross**, 85 A.3d at 104 (reversing murder conviction because the trial court had improperly admitted evidence of the defendant's past violent abuse of women as proof of a common scheme to rape and murder the victim).

In **Commonwealth v. Kasko**, 469 A.2d 181 (Pa. Super. 1981), a case highlighted by Appellant, this Court reversed a defendant's judgment of sentence because his two cases had been erroneously consolidated pursuant to the common scheme exception of Rule 404(b)(2). The material facts of **Kasko** are as follows:

> The criminal activities encompassed by the first of the two consolidated cases were alleged to have occurred "on or about February or March of 1980." In this case, appellant was charged with sexually molesting his girlfriend's six-year-old niece while the

girlfriend baby-sat the child at an apartment shared by the girlfriend and her sister, the child's mother. The specific acts alleged involved the touching of appellant's exposed genitals to the child's anal area, and anal intercourse. These acts were alleged to have occurred in the presence of appellant's girlfriend.

The second of the two consolidated cases alleged similar misconduct with the four-year-old daughter of appellant's step-sister, as well as the corruption of this child and the five-year-old son of appellant's other step-sister by teaching or encouraging the two to have indecent contact with each other. These offenses allegedly occurred sometime between December 15, 1980 and January 26, 1981, while the children were visiting their grandmother at her apartment, which was shared by appellant. These incidents were not alleged to have been committed in the presence of appellant's girlfriend or any other adult.

*Kasko*, at 183-84.

This Court observed in *Kasko* that the victims in the defendant's two cases both involved "children of a similar age group, having a family or personal link to the appellant . . . and [i]n both cases [the defendant] was accused of roughly the same type of misconduct." *Kasko*, 469 A.2d at 185. Despite those similarities, the *Kasko* Court held that that the common scheme exception had not been satisfied:

[T]he two cases were separated by a substantial period of time and involved different victims. They occurred under dissimilar circumstances in that one allegedly occurred in the presence of appellant's girlfriend, later his wife, while the other did not. One case involved both a young boy and a young girl, whereas the other only involved a young girl. Finally, the misconduct alleged in this case is, sadly, not as rare as it should be, but is rather a common form of child abuse. Under these circumstances, we cannot agree that the two cases reach that high degree of correlation in detail required to show a common scheme, plan or design.

- 12 -

***Kasko***, 469 A.2d at 185.

Another analogous case that entitles Appellant to relief is our more recent decision in ***Commonwealth v. Roman-Rosa***, No. 111 MDA 2023 (Pa. Super. filed December 6, 2023) (unpublished memorandum), where the issue was whether two sexual abuse cases were properly consolidated based on the common scheme exception of Rule 404(b)(2). The first victim was the daughter of the defendant's girlfriend, both of whom lived in the defendant's home. At age three or four, the defendant would take off the first victim's clothes and touch her vagina; by age six, the defendant progressed to vaginal penetration with his penis.

The second victim was the daughter of the defendant's subsequent girlfriend. The only incident of abuse of the second victim took place when she was a teenager; while the defendant and the second victim were in bed, the defendant fondled her under her clothing.

The defendant was charged with sex offenses as to both the first victim and the second victim. The trial court approved the consolidation of the cases, and on appeal, this Court had to determine whether the consolidation was permissible pursuant to the common scheme exception in Rule 404(b)(2).

We held that the acts were not strikingly similar, precluding the admission of evidence of one case in the other under Rule 404(b)(2). The pattern of molestation was distinct for each of the victims – "the only real similarity in these crimes is the victim being the daughter of Appellant's

girlfriend, which is more akin to an insignificant detail common to many offenders who sexually abuse their victims." ***Roman-Rosa***, No. 111 MDA 2023, at 16; ***see also Bidwell***, 195 A.3d at 627 (holding that a common scheme was not established by evidence that defendant "was a domestic abuser of women, some of whom he was involved in on-going romantic relationships in the past[.]").[4]

Here, as in ***Roman-Rosa***, the acts collectively described by K.C., D.H., and A.H. did not demonstrate a distinct pattern of conduct by Appellant. The primary similarity in the crimes was that each victim was the child or grandchild of Appellant's girlfriend, which is the kind of familial connection that is all too common when children are sexually abused. Since the prior bad acts here amounted to no more than crimes of the same class as the charged offenses, they should not have been admitted into evidence at trial. ***See Hicks***, 156 A.3d at 1126. By yet finding that such circumstances qualify as a common scheme for the purposes of Rule 404(b)(2), the trial court flouted our Supreme Court's mandate in ***Hicks***.[5]

_____

[4] This Court affirmed the judgment of sentence in ***Roman-Rosa*** because it found that the trial court's error in admitting evidence of prior bad acts was ultimately harmless under the unique circumstances of the case, including the jury's verdict, which partially acquitted the defendant. ***See Roman-Rosa***, No. 111 MDA 2023, at 18 (Pa. Super. filed December 6, 2023) (unpublished memorandum).

[5] Because the admission of A.H.'s allegations violated Rule 404(b)(1), and no exception under Rule 404(b)(2) was satisfied, it is unnecessary for this Court
*(Footnote Continued Next Page)*

Admitting evidence of Appellant's crimes against A.H. was not harmless. "Evidence of prior criminal activity . . . is probably only equaled by a confession in its prejudicial impact upon a jury." **Commonwealth v. Spruill**, 391 A.2d 1048, 1050 (Pa. 1978). "The presumed effect of such evidence is to predispose the minds of the jurors to believe the accused guilty, and thus effectually to strip him of the presumption of innocence." **Trowery**, 235 A.2d at 172; **see also Hicks**, 156 A.3d at 1157 (Wecht, J., dissenting) ("It is natural and well-nigh inevitable . . . that a juror will conclude that, if a person has assaulted women before, he likely will do so again.").

Indeed, the testimony of A.H. could have persuaded the jury to infer that Appellant was predisposed to sexually abuse children, making it more likely that he committed the charged crimes against K.C. and D.H. In a case like this one, where there was no physical evidence of Appellant's guilt, the credibility of the victims was the ultimate issue for the jury to resolve. Allowing A.H. to testify as to Appellant's prior bad acts prejudiced him because such testimony could have improperly bolstered the credibility of K.C. and D.H., and led the jury to believe that Appellant was guilty not because of the evidence, but due to a perceived propensity for him to sexually abuse children. **See Roman-Rosa**, No. 111 MDA 2023, at 20 ("The fact that credibility is

---

to address whether the probative value of that evidence outweighed any prejudicial effect under Rule 404(b)(3). **See Commonwealth v. Ross**, 57 A.3d 85, 104 n.18 (Pa. Super. 2012) (*en banc*).

paramount in sexual abuse cases renders it virtually impossible for this Court to state that the evidence of guilt was so overwhelming" that the evidence could not have contributed to the verdict). To remedy the prejudicial admission of propensity evidence, the judgment of sentence must be vacated, and Appellant must receive a new trial.

Having disposed of Appellant's first issue in his favor, we now turn to his second claim – that the trial court erroneously denied his motion to sever the cases of K.C. and D.H.

Pennsylvania Rule of Criminal Procedure 582 provides that separate cases may be tried together if:

> (a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or
>
> (b) the offenses charged are based on the same act or transaction.

Pa.R.Crim.P. 582(A)(1).

Further, Rule 583 allows courts to "order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together." Pa.R.Crim.P. 583.

"The general policy of the laws is to encourage joinder of offenses and consolidation of indictments when judicial economy can thereby be effected, especially when the result will be to avoid the expensive and time consuming duplication of evidence." *Commonwealth v. Johnson*, 236 A.3d 1141, 1150

(Pa. Super. 2020) (citation omitted). "Whether to join or sever offenses for trial is within the trial court's discretion and will not be reversed on appeal absent a manifest abuse thereof, or prejudice and clear injustice to the defendant." **Commonwealth v. Knoble**, 188 A.3d 1199, 1205 (Pa. Super. 2018) (citation omitted).

Here, Appellant's severance claim on appeal is a closer question than the evidentiary issue discussed above because the testimony of A.H. does not come into play. The trial court had discretion to consolidate the cases of K.C. and D.H. as long as "the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion[.]" Pa.R.Crim.P. 582(A)(1)(b). The Commonwealth had argued, and the trial court found, that the cases could be joined because the evidence of the victims' offenses established a common plan or scheme under Pa.R.E. 404(b)(2). **See** Trial Court Opinion, 9/26/2023, at 2-5.

The record shows that the trial court acted within its discretion in consolidating the cases for trial. At the relevant times, the victims, K.C. and D.H., were siblings who both regularly spent the night at Appellant's home. D.H.'s age at the time of his incident with Appellant was close to the age of K.C. when she was first abused by Appellant. The offenses against the children also occurred under similar circumstances (late at night during "a sleepover"), in the same place (Appellant's living room, where the children

slept when they visited the home), and within a relatively close period of time.[6]

Additionally, Appellant did not suffer any undue prejudice from the consolidation of the cases for trial because the jury would have easily been able to parse the charges in each victim's case. The ongoing abuse of K.C., a female, and the single instance of abuse against D.H., a male, would have made the facts in the respective cases distinguishable. There was minimal danger that the jury would have confused the two cases or somehow conflated them with each other. Thus, since the common plan exception of Pa.R.E. 404(b)(2) was met with respect to K.C. and D.H., the trial court acted within its discretion in denying Appellant's motion to sever the two victims' cases. *See e.g., Commonwealth v. Renninger*, 269 A.3d 548, 564 (Pa. Super. 2022) (affirming denial of severance where evidence in two cases showed that defendant had similarly touched the victims over their clothes, and the commonality of that behavior refuted the defense that the touching was accidental); *Aikens*, 990 A.2d at 1185-86 (holding that common scheme linked two cases, warranting joinder, where both victims were siblings, defendant initiated sexual contact in bed during overnight visits, and the outset of abuse fit a unique pattern of conduct).

---

[6] The offenses against K.C. took place between 2010 and 2017. The offense against D.H. overlapped with that period, taking place between 2012 and 2014.

Judgment of sentence vacated. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judge Bowes joins the memorandum.

Judge Murray files a concurring and dissenting memorandum.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/01/2024