J-S57031-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| BYRON MITCHELL, | : | |
| | : | |
| Appellant | : | No. 2693 EDA 2016 |

Appeal from the Judgment of Sentence July 13, 2016
in the Court of Common Pleas of Philadelphia County,
Criminal Division, No(s):  CP-51-CR-0000253-2014;
CP-51-CR-0000254-2014; CP-51-CR-0000255-2014

BEFORE:  PANELLA, SOLANO and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:           **FILED NOVEMBER 17, 2017**

Byron Mitchell ("Mitchell") appeals from the judgment of sentence imposed following his conviction of one count each of rape, involuntary deviate sexual intercourse, robbery, sexual assault, attempted kidnapping, carrying a firearm on a public street in Philadelphia, two counts each of possession of an instrument of crime, kidnapping and possession of a firearm prohibited, and three counts each of unlawful restraint and false imprisonment.[1]  *See* 18 Pa.C.S.A. §§ 3121(a)(1), 3123(a)(1), 3701(a)(1)(i), 3124.1, 901(a), 6108, 907(a), 2901(a)(1), 6105(a)(1), 2902(a)(1), 2903(a).  We affirm.

---

[1] Mitchell was charged on three separate dockets, which were consolidated for trial.

In its Opinion, the trial court set forth the relevant factual and procedural history, which we adopt herein for the purpose of this appeal. *See* Trial Court Opinion, 1/4/17, at 1-3 (unnumbered).[2]

On appeal, Mitchell raises the following issues for our review:

I. Is [Mitchell] entitled to an arrest of judgment with respect to his convictions for attempted kidnapping, unlawful restraint, and false imprisonment[,] since the evidence is insufficient to sustain the verdicts of guilt[,] as the Commonwealth failed to sustain its burden of proving [Mitchell's] guilt beyond a reasonable doubt?

II. Even if the evidence [was] sufficient to support [Mitchell's] convictions on all charges[, were] the guilty verdicts [] against the weight of the evidence[?]

III. Did the trial court commit prejudicial error by granting the Commonwealth's Motion to consolidate the three cases for a single trial[?]

IV. [Whether Mitchell] is entitled to a new trial because the suppression court improperly denied [Mitchell's] Motion to suppress the evidence obtained during his arrest and detention by the police because the police lacked probable cause to initially detain [Mitchell?]

1. [Whether Mitchell's] seizure by police following the traffic stop was unreasonable and not supported by probable cause[?]

Brief for Appellant at 11 (capitalization omitted, issues renumbered for ease of disposition).

In his first issue, Mitchell contends that the evidence was insufficient

---

[2] In its Opinion, the trial court incorrectly stated the crimes and counts of which Mitchell was convicted. The convictions and counts thereof, as stated previously in this Memorandum, are correct.

to support his conviction of kidnapping and attempted kidnapping because the alleged victims had not been moved a "substantial distance" nor confined for a "substantial period of time." *Id*. at 19-21.

In its Opinion, the trial court determined that Mitchell's challenge to the sufficiency of the evidence was waived due to his failure to articulate in his Concise Statement which elements of which crimes were not sufficiently proven by the Commonwealth.[3]  **See** Trial Court Opinion, 1/4/17, at 6-7 (unnumbered).  Given that Mitchell was convicted of numerous crimes against multiple victims, we agree with the reasoning of the trial court, as stated in its Opinion, and affirm the trial court's determination that Mitchell's challenge to the sufficiency of the evidence is waived.  **See id**.

In his second issue, Mitchell challenges the weight of the evidence supporting his convictions.  Brief for Appellant at 25-26.

Mitchell did not raise any challenge to the weight of the evidence in his Concise Statement.  We therefore affirm the trial court's determination that Mitchell's challenge to the weight of the evidence is waived.  **See** Pa.R.A.P. 1925(b)(3)(vii) (providing that "issues not included in the Statement … are waived."); **see also Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998) (holding that, if an appellant is directed to file a concise statement of

---

[3] In his Concise Statement, Mitchell stated his sufficiency claim as follows: "When considering all of the evidence in the light most favorable to the Commonwealth, there was insufficient [*sic*] to prove the allegations beyond a reasonable doubt." Concise Statement, 10/26/16, at 2 (unnumbered).

matters to be raised on appeal pursuant to Pa.R.A.P. 1925(b), any issues not raised in that statement are waived).

In his third issue, Mitchell contends that the trial court erred by consolidating his three criminal cases for trial. Brief for Appellant at 23. Mitchell asserts that he was prejudiced by the consolidation, as it caused unnecessary juror confusion. *Id*. According to Mitchell, while the separate attacks bore many similarities, those similarities also prejudiced him. *Id*. Mitchell argues that, at a minimum, he should have received a separate trial for the rape case because the other two cases did not involve any sexual assault or rape. *Id*. at 24.

In its Opinion, the trial court addressed Mitchell's third issue, set forth the relevant law, and concluded that the issue lacked merit. *See* Trial Court Opinion, 1/4/17, at 4-6 (unnumbered). We discern no abuse of discretion by the trial court, and affirm on this basis as to Mitchell's third issue. *See id*.

In his fourth issue, Mitchell contends that the suppression court improperly denied his Motion to suppress evidence discovered by police during Mitchell's initial arrest and search. Brief for Appellant at 26. Mitchell claims that, at the time the police pulled him out of his vehicle, they had no reasonable articulable facts to support the contention that criminal activity was afoot, nor probable cause to arrest him for alleged rape. *Id*. at 28. Mitchell argues that, although the initial investigatory detention was

arguably proper, it evolved into a custodial detention when the responding officers handcuffed him and transported him to the police station. *Id*. at 29. Mitchell contends that the police, by their actions and testimony, acknowledge that probable cause did not exist. *Id*. On this basis, Mitchell asserts that the .38 caliber rounds, bandana and the DNA swab are inadmissible as "fruits of the poisonous tree." *Id*. Mitchell claims that his consent to the DNA swab is presumed to be involuntary because it was a product of an illegal detention. *Id*. at 30.

In cases involving a review of the denial of a defendant's suppression motion, we are subject to the following standard of review:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court] is bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [] plenary review.

*Commonwealth v. Jones*, 121 A.3d 524, 526-527 (Pa. Super. 2015) (quoting *Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010) (internal citations and quotation marks omitted)).

In evaluating an interaction between law enforcement and other citizens, Pennsylvania courts look to whether the interaction is a mere encounter, an investigatory detention, or a custodial detention. *See* *Commonwealth v. Downey*, 39 A.3d 401, 405 (Pa. Super. 2012). A mere encounter does not require police to have any level of suspicion that the person is engaged in wrongdoing. *Id*. Such an encounter does not compel the party to stop or respond. *Id*.

An investigative detention subjects an individual to a stop and a short period of detention. *Id*. With regard to an investigatory detention,

> a police officer may, short of an arrest, conduct an investigative detention if he has a reasonable suspicion, based upon specific and articulable facts, that criminality is afoot. The fundamental inquiry is an objective one, namely, whether the facts available to the officer at the moment of the intrusion warrant a man of reasonable caution in the belief that the action taken was appropriate. This assessment, like that applicable to the determination of probable cause, requires an evaluation of the totality of the circumstances, with a lesser showing needed to demonstrate reasonable suspicion in terms of both quantity or content and reliability.

*Commonwealth v. Shabezz*, 129 A.3d 529, 534 (Pa. Super. 2015) (citation omitted, internal brackets omitted).

A custodial detention must be supported by probable cause, which exists if there are facts and circumstances within the police officer's knowledge that would warrant a person of reasonable caution to believe an offense has been committed. *Commonwealth v. Myers*, 728 A.2d 960, 962 (Pa. Super. 1999).

An arrest must also be supported by probable cause, which exists

> when the facts and circumstances within the police officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested. Probable cause justifying a warrantless arrest is determined by the totality of the circumstances.

*Commonwealth v. Williams*, 941 A.2d 14, 27 (Pa. Super. 2008) (internal citations and quotation marks omitted).

Probable cause is governed by an objective standard and "exists when criminality is one reasonable inference—not necessarily even the most likely inference." *Commonwealth v. Spieler*, 887 A.2d 1271, 1275 (Pa. Super. 2005); *see also Commonwealth v. Dennis*, 612 A.2d 1014, 1016 (Pa. Super. 1992) (holding that "we must remember that in dealing with questions of probable cause, we are not dealing with certainties. We are dealing with the factual and practical considerations of everyday life on which reasonable and prudent men act."); *Commonwealth v. Kendrick*, 490 A.2d 923, 927 (Pa. Super. 1985) (holding that probable cause "does not demand any showing that such a belief be correct or more likely true than false.").

Here, the following evidence was presented at the suppression hearing. Detective James Owens ("Detective Owens") of the Special Investigations Unit testified that, after the third attack had occurred on October 15, 2013, the investigation was assigned to his unit. *Id*. at 51. He

further testified that two of the victims met with a sketch artist on October 15, 2013, following the third attack, to create the composite sketches. *Id*. at 47-49. Detective Owens contacted the Fugitive Squad of the Marshal's Task Force and the Major Crimes Home Violence Unit, and asked what manpower their units could provide to assist in the search for the male suspect. *Id*. at 52. These units diverted their officers to help the Special Investigations Unit patrol the Juniata area on the morning of October 16, 2013. *Id*. According to Detective Owens, all of the units participating in the search had been provided with copies of the composite sketches of the male suspect. *Id*. at 54.

Officer Jose Silva ("Officer Silva") testified that, on the morning of October 16, 2013, he and his partner, Officer Cortes,[4] were on duty, in uniform and in a marked police car, patrolling the Juniata area of Philadelphia. N.T., 4/5/16, at 4, 17. At that time, they were aware of a description of a male suspect wanted in connection with the three attacks that had occurred between October 10-15, 2016, in the Juniata area. *Id*. at 5. The male suspect had been described as "thin build, black male, five-six, five-eight possibly[,] dark-complected, wearing Adidas-type jacket or jacket with stripes across arms, possible bandana." *Id*. Additionally, during the rollcall prior to their shift, Officers Silva and Cortes had received composite sketches of the male suspect, which depicted the additional distinctive

---

[4] The record does not contain any reference to Officer Cortes's first name.

feature of "gappy teeth." *Id*. at 5-6. At approximately 9:00 a.m., less than one hour after seeing the composite sketches, Officers Silva and Cortes saw a van parked with two occupants: a female on the driver's side; and a male on the passenger's side. *Id*. at 8, 26. As the officers looked at the male passenger, he acted in a peculiar way by trying to "scrunch down" to get out of the officers' view. *Id*. at 8. The officers decided to investigate the vehicle. *Id*.

After parking behind the vehicle, Officer Cortes approached the passenger side of the vehicle, opened the door and either asked Mitchell to step out of the vehicle or pulled him out. *Id*. at 10, 22. Mitchell somewhat fit the description of the male that police were searching for, due to "the thinness, the build, the height, [and] the dark complexion of him." *Id*. at 12. Mitchell was also wearing a jacket with white stripes. *Id*. at 9. Officer Cortes conducted a pat-down and held Mitchell by the belt. *Id*. at 10-11. Officers Silva and Cortes observed Mitchell "looking back and forth sideways[,]" as if he was "trying to think of an escape." *Id*. at 11. Officers Silva and Cortes, afraid that Mitchell would try to run away, placed him in the back seat of their patrol car. *Id*. The officers asked Mitchell to smile, and observed that he had gap in his teeth. *Id*. at 12-13, 68. Mitchell initially told the officers that he did not have any identification, and gave them a name which they were unable to trace. *Id*. at 12. When confronted with this information, Mitchell produced identification. *Id*.

Meanwhile, Detective Owens had been alerted that a patrol car had stopped a van, and he and his partner proceeded to the scene. *Id*. at 53. Detective Owens testified that each of the three attacks had occurred within a few blocks of the location where the van was parked. *Id*. When Detective Owens arrived at the scene, Mitchell was outside the van, speaking to the officers. *Id*. at 54. According to Detective Owens, Mitchell was wearing a blue jacket with red and white stripes. *Id*. at 59. Based on the description provided by the victims, Mitchell's physical appearance, and his proximity to the locations where the assaults had occurred, Detective Owens directed the officers to bring Mitchell to the 24th District police station for questioning. *Id*. at 55.

Mitchell was taken to the police station, where officers found two .38 caliber rounds and a blue and white bandana in his possession. *Id*. at 57. Although Mitchell had told Detective Owens that he was not on probation or parole, upon investigation, Detective Owens discovered that Mitchell was on parole, and contacted Mitchell's parole officer, Sean Finnegan ("Finnegan"). *Id*. at 56-57, 59. Finnegan thereafter stopped at Mitchell's residence before proceeding to the police station, where Finnegan confronted Mitchell regarding the two rounds of ammunition that had been found in Mitchell's possession. *Id*. at 68-69. Mitchell admitted to Finnegan that the rounds were for a firearm, that Mitchell had used illegal drugs, and had left town without permission, all in violation of his parole. *Id*. at 69.

At the conclusion of the suppression hearing, the suppression court

made the following factual findings:

THE COURT:

Officer Silva from the 24th [D]istrict testified [that] on [October 16, 2013,] he was out in the early morning, or [8:00] a.m., [9:00] a.m. in uniform, in a marked car, and happened upon a van in which [Mitchell] was riding. As [Officer Silva] looked towards the van that morning, gone over the sketch[es], which [are Exhibits] C-1 and C-2, of an individual wanted for assaults in the neighborhood, as he looked towards the van, he could see the male was slouching down, seeming to avoid police.

The car is stopped and [Mitchell] is questioned. At some point [Mitchell] is in the back of the [police] car …. [Mitchell] fitted the description of the sketches. The officers asked him to smile, at which time he showed a gap between his teeth, which apparently was one of the descriptions given by one of the victims.

With this, this was someone who matched the description of an individual responsible for three violent assaults. They were speaking to him and detained him. He was brought to the police 24th district and [] Finnegan, [Mitchell's] parole officer, sat down with him.

At that time, [Finnegan] had the information that [Mitchell] had two rounds of amm[unition], which is a violation of his parole. He was asked about the amm[unition]. And according to [Finnegan], he did not warn [Mitchell] of his *Miranda*[5] warnings because of his position as a parole officer. [Mitchell] told [Finnegan] it was ammunition for a firearm. [Finnegan] asked [Mitchell] if he had left the area. [Mitchell] said ["]yes["], he [had] left the area. [Finnegan a]sked [Mitchell] if he [had] used [illegal] drugs, [and Mitchell told Finnegan that] he had used [illegal] drugs ….

[Finnegan], I believe[,] had been contacted [by police]. [Finnegan] went to [Mitchell's] house before [Finnegan] interviewed [Mitchell].

---

[5] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Is that my understanding?

[THE PROSECUTOR]:

Yes.

THE COURT:

[Finnegan] was at [Mitchell's] house before and observed, and he was allowed to go into that house in his position as a parole officer. [Finnegan] understood that [Mitchell] was being detained, and he observed a jacket with stripes on the sleeves.

[Finnegan] eventually filed a detainer, had [Mitchell] held, which would have happened whether or not there were charges or no charges. [Mitchell] was going to be held for parole violations.

Detective Owens testified that he was part of a team that was on the lookout for the individual involved with the three serious assaults on October 10, 2013, October 10, 2013, and October 15, 2013, and because of the information, he had a good idea of what the suspect would look like, having seen the sketches, [and] the location where [Mitchell] was stopped.

[Detective Owens] spoke to [Mitchell]. [Mitchell,] at that time[,] told [Detective Owens] that [Mitchell] was not on probation or parole, which of course was untrue.

N.T., 4/5/16, at 67-70 (footnote added).[6]  Upon these findings, the suppression court denied Mitchell's Motion to suppress.[7]

---

[6] Notably, Officer Silva testified that, when Mitchell was placed in the back of the patrol car, he was *not* handcuffed. ***See*** N.T., 4/5/16, at 11, 25. However, Detective Owens testified as to his belief that Mitchell *was* handcuffed when in the back of the patrol car. ***See id***. at 61. Because we may only consider so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole, we may not consider this evidence. ***See Jones***, ***supra***.

Based on our independent review, we conclude that suppression court's factual findings are supported by the record. *See id*.; *see also id*. at 4-25, 46-61. Officer Silva provided specific and articulable facts to support his reasonable suspicion that criminality activity was afoot; namely, that Mitchell had attempted to "scrunch down" in the van so as to avoid detection by police. Therefore, the initial investigatory detention conducted by Officers Silva and Cortes was legal. Further, probable cause supporting the custodial detention and subsequent arrest was established, as Mitchell fit the physical description of the male suspect that police were looking for (*i.e.*, gender, ethnicity, height, build, complexion, and "gappy teeth"), his clothing matched that of the male suspect (a jacket with white stripes), he had attempted to avoid detection by police, and was spotted by police just blocks from where the incidents had occurred, and on the day after the last attack had occurred. *See Commonwealth v. Powers*, 398 A.2d 1013, 1015 (Pa. 1979) (holding that the police had probable cause to arrest three men who were in the general area and fit the description of suspects in an assault that had occurred 15 minutes before); *Commonwealth v. Riley*, 425 A.2d 813, 817 (Pa. Super. 1981) (holding that, even if the "arrest" occurred at the

---

[7] Although Mitchell contends on appeal that the suppression court erred by denying his request to suppress a DNA swab, Mitchell's Motion to suppress failed to make any reference to the DNA swab, nor was any testimony offered, or argument made, at the suppression hearing regarding the DNA swab. Thus, Mitchell failed to preserve any claim regarding the DNA swab for our review. *See* Pa.R.A.P. 302 (providing that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

stationhouse, the arresting officer was entitled to rely upon the comparison of appellant to the composite sketch); **Commonwealth v. Lybrand**, 416 A.2d 555, 559 (Pa. Super. 1979) (holding that suppression of a statement the defendant made in custody was properly denied because the defendant matched the composite drawing of the suspect in a murder which had occurred the day before, and because of the circumstances under which the drawing was obtained, there was probable cause for the arrest for murder); **Commonwealth v. Sabb**, 409 A.2d 437, 441 (Pa. Super. 1979) (holding that there was probable cause to arrest the defendant a half-hour after the crime occurred, and three and one-half blocks from the scene, based on the victim's general description). Moreover, Mitchell was subject to arrest because he was in violation of his parole due to his possession of ammunition and admissions that he had left town and used illegal drugs. Therefore, based on the totality of the circumstances, we conclude that Mitchell's detention and subsequent arrest were legal, and the suppression court did not err in denying Mitchell's Motion to suppress. Accordingly, we affirm as to Mitchell's final issue.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date:11/17/2017

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA : PHILADELPHIA COUNTY

: COURT OF COMMON PLEAS

:

VS. : NOS. 51-CR-0000253-2014,
51-CR-0000254-2014,
: 51-CR-0000255-2014

CP-51-CR-0000253-2014 Comm. v. Mitchell, Byron
Opinion

BYRON MITCHELL



7884011471

OPINION

**FILED**

JAN 0 4 2017

Appeals/Post Trial
Office of Judicial Records

PROCEDURAL HISTORY

Defendant, Byron Mitchell, was charged by way of the above three Bills of Information with, *inter alia,* single counts of rape, involuntary deviate sexual intercourse, robbery, sexual assault, attempted kidnapping, carrying a firearm on a public street, and possession of an instrument of crime, generally, two counts of kidnapping, three counts of unlawful restraint, two counts of false imprisonment, and two counts of possession of a firearm prohibited. These charges arose out of three separate following incidents that occurred on October 13, 2013, and October 15, 2013, during which Defendant victimized three women, A. B., then twenty-two (22) years old, C. F., then twenty (20) years old, and N. A., then fifteen (15) years old, near the Erie-

Torresdale Market-Frankford Line in Juniata Park, Philadelphia.[1] The first victim, A.B. was raped at gunpoint and robbed. The second victim, C. F. was assaulted at gun point and the third victim, N. A. was accosted and threatened.

These charges were consolidated for trial by the Honorable Diana L. Anhalt following a hearing on the Commonwealth's motion to consolidate. (N.T. 8/5/14, 4-7). Defendant asked for a trial by jury, which took place from April 5th, 2016 until April 8th 2016. On April 8, 2016, the jury found Defendant guilty of all of the above listed charges. Sentencing was deferred until July 13th, 2016, on which date this Court sentenced defendant to an aggregate sentence of incarceration of 30 to 60 years in a state correctional facility followed by 20 years consecutive probation.

On August 10th, 2016, Defendant filed a timely post-sentence motion alleging that the trial court erred by failing to grant a Defense Motion to Suppress the arrest of Defendant, it was error to fail to grant a defense motion to exclude the fruits of the search incident to the unlawful arrest, including his statement, it was error to grant the Commonwealth's Motion to consolidate the three (3) separate cases for trial, there was insufficient evidence to prove the allegations beyond a reasonable doubt, it was error to deny a defense motion for judgment of acquittal, and the verdict was against the weight of the evidence. On October 30th, 2016, this Court denied the motion. Defendant thereafter filed a timely notice of appeal and a requested Pa.R.A.P. 1925(b) statement.

FACTUAL HISTORY

On the morning of Oct. 13, 2013, the first victim, A. B. (22) was walking on Maywood Street near Lycoming toward the Erie-Torresdale Market-Frankford Line stop around 6:30 a.m.,

---

[1] The matters were consolidated by the Honorable Diana Anhalt on the motion of the Commonwealth on August 5, 2014.

when Defendant came out of an alley, grabbed her jacket and brandished a handgun. He then dragged her into an alley, raped her and stole $30 cash and fled the scene. Later that same morning, C. F., the second victim, was on O Street near Hunting Park Avenue headed toward the same Market-Frankford Line stop when Defendant attempted to pull her into an alley at gunpoint. In that attack, part of which was caught on a surveillance video, a car driving down the street scared the attacker off and gave the victim time to run away.

The last incident occurred on Oct. 15, 2016. Defendant again came out of an alley and accosted N. A., the third victim, while she was on her way to school near Hunting Park Avenue around 7:20 a.m. Defendant grabbed Ms. Atkins' arm and threatened her, but she managed to break free and run to her home, which was nearby.

Following the three incidents, Special Victims Unit patrol officers Silva and Cortes, part of a task force formed to find the assailant or assailants in the three attacks, spotted Defendant, who matched a composite sketch based on the victims' description of him, inside a parked minivan located on the 1500 block of Cayuga Street, near where the three incidents occurred. Defendant was arrested at approximately 9 a.m. on October 16, 2013, by officers Silva and Cortes for violating his parole on a prior armed robbery charge.

## DISCUSSION

In his first two claims, Defendant argues that this Court erred by denying his Motion to Suppress physical evidence and statements given by him because authorities lacked probable cause to arrest him. In addition to the findings of fact and conclusions of law set forth following the suppression hearing,[2] this Court would add that the arrest was clearly legal because the arresting officer had seen the composite sketch and had reason to conclude that Defendant, who when stopped was in the area where the incidents herein occurred, matched the person depicted in the sketch. See Commonwealth v. Lybrand, 416 A.2d

---

[2] See N.T. 4/5/16, 67-70).

555, 558-559 (Pa. Super. 1979) (holding that police had probable cause to arrest based on a composite sketch). Accordingly, it is suggested that relief be denied with respect to this claim.

Defendant next claims that it was error to grant the Commonwealth's Motion to Consolidate the Charges. Issues of this sort are reviewed under an abuse of discretion standard. Commonwealth v. Thomas, 879 A.2d 246, 260 (Pa. Super. 2005). Pa.R.Crim.P. 582 controls here and states that offenses charged in separate indictments may be consolidated for trial if the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so there is no danger of confusion. Pa.R.Crim.P. 582(A)(1)(a). In deciding whether evidence of each offense would be admissible in another trial, courts must remember that evidence of distinct crimes are not admissible against a defendant being prosecuted in another crime solely to show his bad character and his propensity for committing criminal acts. Commonwealth v. Lark, 543 A.2d 49, 497 (Pa 1988); Commonwealth v. Taylor, 671 A.2d 235 (Pa. Super. 1996). Nevertheless, evidence of other crimes may be admissible where the evidence is relevant for some other legitimate purpose. Lark, supra; Commonwealth v. Brown, 342 A.2d 84 (Pa. 1975); Commonwealth v. Taylor, 671 A.2d 235 (Pa. Super. 1996). Legitimate purposes include:

> "(1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged with the commission of the crime on trial, in other words, where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other."

Lark, 543 A.2d at 493, quoting Commonwealth v. Morris, 425 A.2d 715, 720 (Pa. 1981). See also Commonwealth v. Brown, 342 A.2d 84 (Pa 1975). Further, evidence of other crimes is

admissible for a sixth legitimate purpose in situations where distinct crimes were part of a chain, or one of sequence of events, or became part of the history of the case on trial, or was part of the natural development of the facts. Lark, 543 A.2d at 497.

Instantly, Judge Anhalt granted the Commonwealth's motion because of the numerous similarities in the commission of each of the three crimes. First, they each occurred within a couple of days and a few blocks of one another under almost identical circumstances. In each crime, defendant accosted young women who were alone at the time, at approximately the same time of day. In each case defendant intended to force his victim into a desolate spot and luckily he succeeded in that endeavor only once. Confronted with this evidence, Judge Anhalt properly granted the Commonwealth's motion.

In Commonwealth v. Armstrong, 74 A.3d 228 (Pa. Super. 2013), the Superior Court ruled that the lower court did not abuse its discretion by granting consolidation of two counts of burglary that took place in close temporal and geographic location, and which were committed against women who were alone in their homes late at night. In both instances Armstrong employed similar methods in his attempts to gain entry and the burglaries occurred two months apart, late at night, in the same area of the city. The Superior Court rested its decision on the fact that the Commonwealth demonstrated a high levels in the details of the crimes making it very unlikely that any one other than defendant committed them. Id., 74 A.3d at 234. See also Commonwealth v. Janda, 14 A.3d 147 (Pa. Super. 2011) (holding that consolidation of nine burglary cases was appropriate because the nine burglarized homes were located within approximately a five- to six-mile radius of one another, the residences were mostly not observable from a nearby road, the burglaries were committed over a five-month time span, and

evidence from each theft was relevant to the prosecution of the other thefts to establish identity as the perpetrator. Janda, 14 A.3d at 156.

Accordingly, for all of the foregoing reasons, Defendant's claim with respect to this issue should be denied.

In his last three issues, defendant baldly argues that the evidence was insufficient to sustain the charges, this Court erred by denying a motion seeking a Judgment of Acquittal, and the verdicts were against the weight of the evidence. It is respectfully suggested that these claims be deemed waived because of defects in the manner in which these issues were presented in his Pa.R.A.P. 1925(b) statement. Specifically, Defendant failed to articulate why the evidence was insufficient, how or why it was error to deny his motion for judgment of acquittal, and how the verdicts were against the weight of the evidence.[3]

The purpose of Rule 1925(b) is "to aid trial judges in identifying and focusing upon those issues which the parties plan to raise on appeal," Commonwealth v. Lemon, 804 A.2d 34, 37 (Pa. Super. 2002), citing Commonwealth v. Lord, 719 A.2d 306 (Pa. 1998), so that the trial court may prepare an appropriate opinion. "The absence of a trial court opinion poses a substantial impediment to meaningful and effective appellate review." Commonwealth v. Siebert, 799 A.2d 54, 62 (Pa. Super. 2002), quoting Lord, 719 A.2d at 308. For this reason, Rule 1925 is considered "a crucial component of the appellate process." Lemon, 804 A.2d at 62, quoting Lord, 719 A.2d at 308. The failure to prepare a proper Rule 1925(b) statement impedes the trial court's "preparation of a legal analysis which is pertinent to those issues," thereby hindering appellate review. Id., quoting, In re Estate of Daubert, 757 A.2d 962, 963 (Pa. Super. 2000).

Pa.R.A.P. 1925(b)(4)(ii) provides that an appellant's concise statement of errors complained of on appeal "shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge"). Pa.R.A.P. 1925(b)(4)(vii) provides that "Issues not

---

[3] Both a motion for a judgment of acquittal and a claim that the evidence was insufficient challenge the sufficiency of the evidence to sustain a conviction and are governed by the same legal standards. See Commonwealth v. Hutchinson, 947 A. 2d 800, 805 (Pa. Super. 2008)

included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived". See also Commonwealth v. Hansley, 24 A.3d 410, 415 (Pa. Super. 2011) (citations omitted) ("Rule 1925(b) statement must be 'specific enough for the trial court to identify and address the issue [an appellant] wish[es] to raise on appeal'... if a concise statement is too vague, the court may find waiver").

Applying the foregoing to Defendant's sufficiency claim it should be deemed waived because Defendant failed to articulate which elements of the crimes of which he was convicted the Commonwealth failed to establish. "[W]hen challenging the sufficiency of the evidence on appeal, the [a]ppellant's [Rule] 1925 statement must 'specify the element or elements upon which the evidence was insufficient' in order to preserve the issue for appeal." Commonwealth v. Gibbs, 981 A.2d 274, 281 (Pa. Super. 2009), appeal denied, 3 A.3d 670 (Pa. 2010) (quoting Commonwealth v. Williams, 959 A.2d 1252, 1257 (Pa. Super. 2008)). "Such specificity is of particular importance in cases here...the [a]ppellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." Gibbs, supra (holding appellant waived challenge to sufficiency of evidence where appellant failed to specify in Rule 1925(b) statement which convictions, and which elements of those crimes, he was challenging on appeal; fact that trial court addressed appellant's sufficiency claim in its opinion was of no moment to waiver analysis).

Similarly, case law is clear that the failure to articulate in a Pa.R.A.P. 1925(b) statement why or how a verdict is against the weight of the evidence waives such a claim for purposes of appellate review. See Commonwealth v. Seibert, 799 A.2d 54, 62 (Pa. Super. 2002) (holding that appellant waived review of weigh claim because it was too vague to permit the trial court to review it).

Accordingly, it is suggested that the Honorable Court deem Defendant's last three issues waived for purposes of appellate review because of the vague manner in which they were raised in his Pa.R.A.P. 1925(b) statement. [4]

---

[4] Even if the claims are deemed not to have been waived, it is suggested that the claims be found to lack merit. In assessing the sufficiency of evidence, the court must view the evidence in the light most favorable to the verdict winner – in this case, the Commonwealth- and determine whether that evidence proves each element of the crime

CONCLUSION

Based on the foregoing, the judgment of sentence should be affirmed.

By the Court,

Honorable Jeffrey P. Minehart

DATE: 1/4/17

---

beyond a reasonable doubt. <u>Commonwealth v. Boczkowski</u>, 846 A.2d 75, 80 (Pa. 2004). With regard to the sufficiency of the evidence, the Commonwealth satisfied its burden by presenting testimony from the victims with regard to the crimes and by establishing that each of the crimes were so similar in the manner in which they were committed that proof of one established that defendant committed the others. In addition, the verdicts were not against the weight of the evidence given that the witnesses gave credible testimony and the crimes were so similar thereby undermining any claim that the verdicts shock the conscience, the test applicable to weight claims. <u>See</u> <u>Commonwealth v. Sanchez</u>, 36 .3d 24, 27 (Pa. 2011) (stating that "[r]elief on a weight of the evidence claim is reserved for extraordinary circumstances, when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." (citation omitted)).