J-S11019-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JALEN DANDRE REYNOLDS | : | |
| | : | |
| Appellant | : | No. 1130 WDA 2020 |

Appeal from the Judgment of Sentence Entered August 9, 2018,
in the Court of Common Pleas of Erie County,
Criminal Division at No(s): CP-25-CR-0002655-2017.

BEFORE: STABILE, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:  **FILED: August 19, 2021**

Jalen Dandre Reynolds appeals from the judgment of sentence imposed following his conviction of murder of the second degree, aggravated assault, recklessly endangering another person ("REAP"), conspiracy to commit robbery, and related firearms offenses.[1]  We affirm.

The trial court summarized the relevant factual and procedural history as follows:

> On June 29, 2017, [Reynolds], and two co-defendants, Taisha Santiago and Lashonda Dade, conspired to rob two individuals, David Tate and Rashaad Jones.  During the robbery, [Reynolds] shot and killed Tate and shot and severely injured Jones. . . .

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. §§ 2502(b), 2702(a)(1), 2705, 903, 2707.1(a), 6106(a)(1), 907(a),

Santiago set up a meeting with the victims, Tate and Jones, ostensibly to arrange a sexual encounter between Santiago, the two victims and a female. Santiago arranged for Tate and Jones to pick her up at her house with the plan of taking her and a female back to Jones' residence . . ..

In the meantime, Dade drove [Reynolds] to Santiago's house where [Reynolds] exited the vehicle and had a conversation with Santiago outside the residence. After [Reynolds] re-entered the car, Dade drove to Jones' residence and parked outside while [Reynolds] waited for Santiago's instructions via cell phone. Tate and Jones exited Jones' residence and drove away to pick up Santiago. After Tate and Jones left, [Reynolds] received a communication from Santiago, exited Dade's parked vehicle and stationed himself outside Jones' residence. Dade remained inside the vehicle. Another assailant, David Dalton, arrived and positioned himself on Jones' front porch.

Shortly thereafter, Tate and Jones returned to Jones' residence with Santiago and exited Jones' vehicle. Jones walked up to his front porch where he encountered Dalton. A struggle between Jones and Dalton ensued. [Reynolds] who was waiting outside the residence, shot and killed Tate on the sidewalk. Jones was shot multiple times. Though Jones survived, he underwent multiple surgeries from the incident and remains symptomatic from his injuries.

Trial Court Opinion, 8/26/19, at 1-2.

The matter proceeded to trial, at the conclusion of which a jury found Reynolds guilty of one count each of murder of the second degree and firearms not to be carried without a license, two counts of aggravated assault, four counts of REAP, and one count each criminal conspiracy (robbery) possessing instruments of crime, and discharge of a firearm into an occupied structure. On August 9, 2018, the trial court imposed an aggregate sentence of life imprisonment without the possibility of parole,

- 2 -

followed by seven to fourteen years in prison. Reynolds filed post-sentence motions which the trial court denied. Reynolds filed a timely notice of appeal. Both Reynolds and the trial court complied with Pa.R.A.P. 1925.

Reynolds raises the following issues for our review:

1. Did the trial court err as a matter of law and/or abuse its discretion when it denied [Reynolds'] motion to compel discovery, seeking to require the Commonwealth to disclose the details of plea offers/negotiations regarding [Dade]?

2. Did the trial court err as a matter of law and/or [abuse] its discretion in denying [Reynolds'] motion *in limine* to exclude identification, as the identification of [Reynolds] by [Jones] was so unreliable and tainted that it deprived [Reynolds] of the right to a fair trial, and his right to due process as guaranteed by both the U.S. Constitution and the Constitution of Pennsylvania[?]

Reynold's Brief at 9 (excess capitalization omitted).

In his first issue, Reynolds challenges the trial court's denial of his motion to compel discovery. Our standard of review over evidentiary rulings requires us to determine whether the trial court abused its discretion. **See Commonwealth v. Henkel**, 938 A.2d 433, 440 (Pa. Super. 2007). An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. **Id**.

Reynolds asserts that the trial court's denial of his discovery motion constitutes a violation of **Brady v. Maryland**, 373 U.S. 83 (1963), which

requires the prosecution to release to the defense all material evidence tending to absolve the defendant. The law governing alleged **Brady** violations is well-settled:

> In **Brady**, the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. The Supreme Court subsequently held that the duty to disclose such evidence is applicable even if there has been no request by the accused, and that the duty may encompass impeachment evidence as well as directly exculpatory evidence.

**Commonwealth v. Lambert**, 884 A.2d 848, 853-54 (Pa. 2005) (cleaned up).

Under **Brady**, any implication, promise or understanding that the government would extend leniency in exchange for a witness's testimony is relevant to the witness's credibility. **See Commonwealth v. Burkhardt**, 833 A.2d 233, 241 (Pa. Super. 2003) (*en banc*) (*citing* **United States v. Giglio**, 405 U.S. 150 (1972)). The understanding between the prosecution and its testifying witness need not be in the form of a signed contract or a completed, ironclad agreement in order to qualify as **Brady** material. **See Commonwealth v. Chmiel**, 30 A.3d 1111, 1131 (Pa. 2011). Instead, **Brady** requires the Commonwealth to disclose not only definitive agreements, deals struck, and ironclad, signed, sealed contracts, but also any potential understanding between the prosecution and its witness, and any implication, promise, or understanding that the government would

extend leniency in exchange for a witness' testimony. **See Commonwealth v. Kinard**, 95 A.3d 279, 290 (Pa. Super. 2014).

Nevertheless, "to establish a **Brady** violation, a defendant must demonstrate that: (1) the evidence was suppressed by the Commonwealth, either willfully or inadvertently; (2) the evidence was favorable to the defendant; and (3) the evidence was material, in that its omission resulted in prejudice to the defendant." **Commonwealth v. Haskins**, 60 A.3d 538, 547 (Pa. Super. 2012) (citations omitted). The burden rests with the defendant to "prove by reference to the record, that evidence was withheld or suppressed by the prosecution." **Id**.

Reynolds contends that the trial court should have granted his motion to compel the Commonwealth to disclose the specific details of its plea agreement with Dade. According to Reynolds, after he was sentenced, Dade was sentenced to a single count of conspiracy to commit robbery which was a lesser charge than second-degree-murder, for which he was convicted. Reynolds claims that, although Dade eventually admitted that she had lied to law enforcement, she nevertheless continued to minimize her involvement in the criminal scheme.

Reynolds claims that the plea bargain that prosecutors made with Dade was relevant to her credibility, and his counsel was entitled to know the details of that plea bargain even if it was not finalized. Reynolds contends that his counsel attempted to impeach Dade's credibility by making

the jury aware that she would be receiving significant consideration for her testimony, but Reynolds was prevented from doing so by the denial of his motion to compel. Reynolds maintains that, by denying his motion to compel, the trial court denied him the right to a fair trial, his right to due process, and his right to confront witnesses.

The trial court addressed Reynolds' first issue and concluded that it lacked merit. The court explained its reasoning as follows:

> On June 15, 2018, [Reynolds] filed a motion to compel discovery. In the motion, [Reynolds] claimed Dade's motion to continue her trial until after [Reynolds'] trial and Dade's testimony on behalf of the Commonwealth at [Reynolds'] trial was evidence "Dade will be given consideration by the Commonwealth for her cooperation and testimony, in the form of a plea and/or sentencing bargain" and "counsel for [Reynolds] is entitled to know the details of said bargain, even if it is not finalized." The court heard oral argument for the motion on June 15, 2018. The Commonwealth informed the court no plea bargain with Dade existed and it was waiting until after Dade testified to discuss a plea bargain. After oral argument, the court denied the motion to compel.
>
> * * * *
>
> [Reynolds] makes the vague and unsubstantiated assertion there must have been a plea deal because 1) the Commonwealth's denial of plea negotiations with Dade occurred and 2) the Commonwealth's denial that it knew what considerations Dade would be given for testifying, "defy reason and logic." [Reynolds] cites [**Burkhardt**] and **Commonwealth v. Johnston**[, 644 A.2d 168 (Pa. Super. 1994)] in support of his position any "implication" or "understanding" of a plea deal with Dade should have been disclosed prior to [Reynolds'] trial. [Reynolds'] contentions are doubly flawed. First, the record supports the conclusion [that] no plea deal with Dade existed prior to [Reynolds'] trial. Second, in the absence of a plea deal prior to trial[,] the cited cases do not support the proposition that [Reynolds] asserts.

\* \* \* \*

Here, like [in] **Burkhardt**, the Commonwealth did not make any promises to Dade about a plea deal but Dade was "hoping" to get a deal after she testified. Dade's hope for a future plea deal does not trigger the protections of **Brady**. Furthermore, [Reynolds'] suggestion that the Commonwealth and Dade had an implicit understanding of a plea deal does not entitle [Reynolds] to relief, as the **Burkhardt** court stated "we [do not] accept any suggestion, that the Commonwealth attorneys regularly engage in attempts to keep promises of leniency both off the record and implicit, rather than explicit." **Burkhardt**, 833 A.2d at 243. Lastly, by waiting until after Dade testified to discuss a plea deal, the Commonwealth engaged in "a sound, professional policy that should not be discouraged." **Id**.

Additionally, **Johnston** is distinguishable. In **Johnston**, the Commonwealth did not disclose to the defense and jury that the testimony of a co-defendant at Johnston's trial was taken into consideration at the co-defendant's sentencing hearing which occurred prior to Johnston's trial. [ **Johnston**, 644 A.2d at 170-72]. Here, no plea negotiations between Dade and the Commonwealth occurred before Dade testified at [Reynolds'] trial. [Reynolds'] trial concluded before Dade pled guilty and was sentenced. This claim wholly lacks merit.

Trial Court Opinion, 8/26/19, at 4-6 (unnecessary capitalization and citations to the record omitted).

We discern no abuse of discretion by the trial court in denying Reynolds' motion to compel. Reynolds failed to prove the first prong of the above-stated test, as he proffered no evidence whatsoever that the Commonwealth had, in fact, made promises to, or had any deals with Dade at the time of Reynolds' trial. Rather, Reynolds merely surmises as much based on the fact that Dade received a more lenient sentence to a lesser charge within a short time after she testified against Reynolds. This alone is

insufficient to prove a ***Brady*** violation. ***See Commonwealth v. Morales***, 701 A.2d 516, 522-523 (Pa. 1997) (declining to find a ***Brady*** violation based on alleged plea deal with witness where appellant offered nothing besides mere conjecture that such an arrangement existed); ***see also Commonwealth v. Tielsch***, 934 A.2d 81, 88 (Pa. Super. 2007) (holding that appellant's mere allegation that the district attorney had promised to assist in efforts to gain a reduction in the witness' federal sentence is not sufficient to establish that such an agreement, in fact, existed either before or at the time of trial); ***Commonwealth v. Champney***, 832 A.2d 403, 412 (Pa. 2003) (holding that mere assumption that something such as a promise to assist in reducing a witness's federal sentence must have been made is not sufficient to establish that such an agreement in fact existed). In the instant matter, Reynolds has offered nothing more than mere conjecture that any implication, promise, or understanding was made to Dade prior to her testimony at Reynolds' trial. Accordingly, his first issue merits no relief.

In his second issue, Reynolds challenges the trial court's denial of his motion *in limine* to preclude the identification testimony provided by Jones because there had been a news release which included a photo of Reynolds. In reviewing the grant or denial of a motion *in limine*, this Court applies an abuse of discretion standard of review. ***See Commonwealth v. Stokes***, 78 A.3d 644, 654 (Pa. Super. 2013). An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has

reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. ***See Commonwealth v. Alicia***, 92 A.3d 753, 760 (Pa. 2014).

With regard to identifications resulting from media exposure, the Pennsylvania Supreme Court has discussed the matter as follows:

> Whether a pretrial identification is to be suppressed as unreliable and, hence, violative of due process, is determined from the totality of the circumstances. A pretrial identification will not be suppressed as violative of due process rights unless the facts demonstrate that the identification procedure was so infected by suggestiveness as to give rise to a substantial likelihood of irreparable misidentification. Even where a pretrial identification is tainted by impermissibly suggestive pretrial procedures, the subsequent in-court identification will be admissible if there exists an independent basis for the identification. The factors to consider when determining whether an independent basis exists for the identification are: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation.

***Commonwealth v. Pierce***, 786 A.2d 203, 217 (Pa. 2001). An independent basis is established when "the in-court identification resulted from the criminal act and not the suggestive [identification procedure]." ***Commonwealth v. Davis***, 17 A.3d 390, 394 (Pa. Super. 2011).

Reynolds claims that Jones' identification testimony was so unreliable and tainted that it deprived him of his rights to a fair trial and due process. According to Reynolds, Jones placed two calls to 911 after the incident and,

when he was asked during the second 911 call if he had any idea who shot him, he repeatedly answered that he did not. Reynolds maintains that, shortly after the shooting, Jones was interviewed by the police and could not identify Reynolds because Jones was so intoxicated that night. Reynolds further maintains that, when police asked him if he could tell whether the assailant was black or white, he said no and indicated that it was too dark, and the porch light was off. Reynolds argues that two weeks after the shooting, Jones identified Reynolds in a photo line-up "simply because of a news release and the photo of [Reynolds] there." Reynolds' Brief at 16.

Reynolds' argument is woefully underdeveloped. Nowhere in his brief does he direct us to the evidence of record on which he relies. *See* Pa.R.A.P. 2119(c), (d). For example, Reynolds does not indicate the place(s) in the record where Jones made calls to 911, where Jones was interviewed by police, where Jones failed to identify Reynolds, where there was a news release which included a photo of Reynolds, or where Jones later identified Reynolds in a line-up. Without any understanding of these critical facts, we are wholly unable to determine whether the identification procedure was so infected by suggestiveness that substantial likelihood of irreparable misidentification occurred. *See Pierce*, 786 A.2d at 217.[2] It is

_____

[2] If Reynolds had been able to establish that there had, in fact, been an impermissible suggestive identification, the Commonwealth would then bear the burden of establishing by clear and convincing evidence that Jones'
*(Footnote Continued Next Page)*

not this Court's responsibility to sort through the volumes of trial transcripts to locate this evidence. *See Commonwealth v. Einhorn*, 911 A.2d 960, 970 (Pa. Super. 2006) (concluding that arguments which are undeveloped and lack citation to factual background or the certified record are waived). Accordingly, we conclude that Reynolds has waived his second issue.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  8/19/2021

*(Footnote Continued)* ———————————

identification was not induced by events occurring between the time of the crime and the in court-identification. *See Commonwealth v. Carter*, 643 A.2d 61, 71 (Pa. 1994)